## JOHN CLARY *v.* PATRICK McGLYNN.

### *Construction of Deed. Boundaries. Costs. Practice.*

Where a deed described the line in dispute as running *from a corner*, on a given course, a given number of rods, *to a corner*, but did not state whether the corners were marked on the land or not, and it appeared by parol that they were in fact marked by means of monuments, and that there was a straight line of marked trees from one corner to the other, it was *held*, that the authentic line would be a straight line from one corner to the other, notwithstanding it did not conform to the course and distance given in the deed; and that the fact of the existence of said line of marked trees, was legitimate, as tending to show the marked corners called for by the deed.

The exception in §22, ch. 125, Gen. Sts., which allows the plaintiff full costs in trespass on the freehold, when the right of title or possession of real estate comes in question, although he recovers no more than seven dollars damages, does not withdraw the sub-

ject from the scope and effect of §18, ch. 33, which provides that when the plaintiff recovers only nominal damages, the court may in their discretion make such order in respect to the allowance of costs to the plaintiff as shall be just and equitable.

It must appear very plainly upon the face of the exceptions, that the county court erred in its order as to costs, to warrant the supreme court to reverse the judgment as to costs.

TRESPASS *qua. clau.* for cutting and carrying away wood and timber.

The land, on which the trespass was claimed to have been committed, consisted of a strip of land some seven or eight rods in width at its east end, and running to a point at its west end, seventy-two rods in length, and lying between the plaintiff's and the defendant's farm—the plaintiff's farm lying north, and the defendant's south,. of said strip. The cutting and taking away of said wood and timber was conceded. All of said wood and timber was cut on said strip, with the exception of one maple tree, which was, when cut, lying north of said strip, upon land conceded to belong to the plaintiff. Extending across the north side of said strip, it appeared there was a line of marked trees; and also upon the south side. The plaintiff claimed that the last-named line of trees was the south line of his farm, and that said strip belonged to him; while the defendant claimed that the first-named line of trees was the south line of the plaintiff's farm. The main question controverted on the trial was, as to which of said lines was the true south line of the plaintiff's farm, as originally located and established. It was conceded, that if the line of marked trees on the south of said strip, was the true line of the plaintiff's farm, he was entitled to recover for the wood and timber cut and carried away therefrom. It appeared that the plaintiff's farm, and part of the defendant's land, was originally a part of the " governor's right " in the town of Underhill, and that the plaintiff's farm is bounded on the north by the north line of said right, which originally contained about five hundred acres; that previous and down to July 26th, 1824, Mills Olcott was the owner and original proprietor of all said right; that on the said 26th day of July, by his deed of that date, he conveyed a part of said right, embracing the plaintiff's farm, the northern portion of the defendant's land, including said strip, and also the lands adjoin-

ing the plaintiff's farm and disputed strip on the east and west, to one Erastus Freeman; that on the 31st day of October, 1824, the said Freeman, by his deed of that date, conveyed the same lands to Warren and Ruth Bancroft; that on the 8th day of January, 1834, the said Warren, by his deed of that date, conveyed his interest in said lands to Jennison Bancroft; that on the 14th day of December, 1837, the said Jennison and Ruth divided a portion of the same lands between themselves; the said Jennison quit-claiming his interest in the lands which now constitute the plaintiff's farm, to the said Ruth; and the said Ruth quit-claiming to the said Jennison that tract which now constitutes the Conner farm, adjoining the plaintiff's farm on the east. It further appeared that the said Ruth, on the 13th day of June, 1844, by her deed of that date, conveyed the lands which now constitute the plaintiff's farm, to Henry S. Benedict, and that the same land was by successive conveyances conveyed in an unbroken chain of title to the plaintiff.

It appeared that the first description of the plaintiff's farm, by metes and bounds, and to which all subsequent conveyances refer, was in the said quit-claim deed from said Jennison to said Ruth, which is as follows : " Beginning in the north line of said right, forty rods westerly from the north-east corner of said right, thence north 54° west 63 rods, to a stake and stones ; thence south 36° west 148 rods ; thence north 54° west 22 rods to a stake ; thence south 28° west 25 rods to a corner ; thence south 26° east 72 rods [which is the line in controversy] to a corner ; thence north 63° east 43 rods, to a corner ; thence north 63° east 40 rods, to a corner ; thence south 6° east 18 rods, to a corner ; thence north 36° east 46 rods, to a corner ; thence north 54° west 12½ rods, to a corner ; thence north 36° east, a right line to the place of beginning, containing 82 acres, more or less." It was conceded that the plaintiff and defendant each owned their respective farms, the main controversy being as before stated.

The defendant did not show title in himself, from either Olcott or Freeman, but from the heirs of one Bell, through Whitcomb and other subsequent grantees. Whitcomb purchased the defendant's land of Bell's heirs, in 1857 ; but it did not appear what

title the said Bell, or his heirs, had to said land. It farther appeared that in all the conveyances, from Bell's heirs down to that to the defendant, the defendant's land was described as bounded on the north by the plaintiff's land. It was conceded that the true point at which the survey of the plaintiff's land should commence, was forty rods from the north-east corner of the "governor's right," in the north line of said right, that corner of said right not being in dispute. It farther appeared that some time after the trespasses complained of were committed, the plaintiff procured one Hildreth, a surveyor, to make a survey of his land, in order to determine the location of his south line; that Hildreth, in making his survey, followed and was governed by the courses and distances given in the deeds from Jennison and Ruth Bancroft in the plaintiff's chain of title; that Hildreth, in making his survey of plaintiff's south line, marked a line of trees, which is the line of marked trees above referred to as the south line of said strip claimed by plaintiff, and which line he claimed to be his south line. Hildreth's survey carried the plaintiff's south line so far south as to include all of said strip as a part of plaintiff's farm. It was conceded that Hildreth, in making his survey of plaintiff's south line, correctly followed the course given in the conveyances above referred to in the plaintiff's chain of title. The defendant's parol évidence tended to show, that the line of marked trees extending across the north side of said disputed strip, was the line established and located as, and that said trees were marked as the monuments of, the south line of the plaintiff's farm, at the time when the said Jennison and Ruth executed deeds to each other as aforesaid.

The defendant's evidence also tended to show, that in addition to said line of marked trees, there were at each end of said line, for several years after the division between the said Ruth and Jennison as above stated, a stake and stones, which were on and in said marked-tree line; and that they were located and established as the south-east and the south-west corners of the plaintiff's farm, at the time when said marked-tree line was located and established and said trees were marked; and that said stones still remain, and that the remains of said stakes were found in 1869, and also that the plaintiff and his grantors in chain of title had

regarded, treated, and claimed said marked-tree line to be the true south line of the plaintiff's farm; and that in 1858 the plaintiff and one Whitcomb, who was then the owner of defendant's land, divided the line fence on said line between them, and that the plaintiff built his part of said fence on said line of marked trees, claiming it to be his true south line, and also that the plaintiff never claimed said line of marked trees was not his true south line, until after the trespasses complained of were committed. Whitcomb built his portion of said line fence. The defendant made no claim of title to said disputed strip by adverse possession; and conceded that it belonged to plaintiff, if the jury found that the Hildreth line was the true south line of the plaintiff's farm.

It appeared that when said maple tree was cut by the defendant, it was lying upon the ground, having been blown down by the wind, and that it was cut under the belief that it was upon defendant's side of the plaintiff's south line; and defendant's evidence tended to show that it was on the south side of the line fence as erected by Whitcomb, as above stated, in 1858, but which fence proved to be a little north of said marked-tree line, at the point where said tree stood. Said tree was not removed by the defendant.

Upon the first trial of this action, when the jury disagreed, the defendant claimed that said tree was on the south side of said marked-tree line, claimed by defendant to be the true south line of plaintiff's farm; but on this trial he conceded that it stood just north of said line, and upon the plaintiff's land. The defendant never claimed title to the land where said tree stood, except as above stated, nor that it was on his side of the plaintiff's south line.

The starting point for the survey of the plaintiff's land, as surveyed by Hildreth, having been conceded to be correct, the plaintiff requested the court to instruct the jury, that if they found that the Hildreth survey was in accordance with the plaintiff's deed, and the descriptions contained in those of his grantors, the boundary of his farm on the south side could not be limited, or the quantity of land called for by the courses and distances in his deed, limited by reason of a marked-tree line not mentioned

or referred to in such deed, and which was north of the line called for by the deed. The court refused to charge as requested; but did charge, that if the jury found that the said Ruth and Jennison, at the time of the division as above referred to, surveyed out and established said marked-tree line as being the line of these tracts, and thus made their deed, and by their deed misdescribed it, and did not make their deed to correspond with their survey,— both parties acting with reference to the survey as actually made and with reference to the line as then established by them,— then the monuments upon the line, if found to be those originally fixed by said parties, would control the description of the land given in their deed; but that if such monuments were not fixed as a part, and the monuments of, such original line, at the time it was first located and established, before or simultaneous with the making of the deed, but were made subsequently, or were fixed after the conveyance from the said Jennison to the said Ruth, then the courses and distances given in the deed would control, and the plaintiff be entitled to hold accordingly, to the limits of his deed. The court also instructed the jury, that the real question to be settled by them was, where the real line between the lands of the plaintiff and defendant was ; that in order to justify them in departing from the line and the courses given in the deeds in the plaintiff's chain of title, and from the line found by accurately following the courses given, and in establishing the line claimed by the defendant as the true line,— a line north of the Hildreth line, established by following the courses given in the deeds,—they must be well satisfied, and find from all the evidence in the case, that the line as claimed by the defendant, and as indicated by corners and marked trees, was the original line which was made and established at the time the tract of land, now the plaintiff's farm, was originally surveyed and run out, when the division between the said Ruth and Jennison was made, and when the description in their deed was given ; and that if they did so find, and that said corners were so fixed, and said trees were then marked as the monuments of said line, they would control the courses and distances given.

To the refusal to charge as requested, and to the charge as above stated, the plaintiff excepted. The charge in all other respects was such as the case called for.

The jury, by special verdict, found that the marked-tree line was the true south line of the plaintiff's farm, as claimed by defendant; and returned a verdict in favor of the plaintiff for one cent damages for the cutting of said maple tree. The plaintiff claimed that upon the facts disclosed by the evidence, the issues formed by the pleadings, and the claims of the defendant on trial, he was entitled to recover full costs; but the court held that he was entitled to recover no more costs than damages; to which the plaintiff also excepted.

*L. F. Wilbur* and *Henry Ballard*, for the plaintiff.

The court should have charged as requested. Upon the facts disclosed in this case, the plaintiff can hold all the land called for by a survey in accordance with the courses and distances given in his deed; and the boundary lines will be determined by such survey. *Gilman* v. *Smith*, 12 Vt. 150; *Owen & wife* v. *Foster*, 13 Vt. 263; *Robinson* v. *Miller*, 37 Me. 313; 7 U. S. Dig. 116, § 15. The rule of law, that in the construction of deeds, the courses and distances given in them, yield to, and are governed by, known and fixed monuments upon the land itself, applies only in cases where the monuments are referred to in the deeds themselves. In all of the cases in which this rule is laid down, it will be found that the known and fixed monuments that controlled the courses and distances, were referred to in the deeds themselves.

The charge as given upon this point was erroneous. The rule is well settled, that where courses and distances alone are given in the description of land conveyed by deed, these courses and distances will govern as to the quantity of land conveyed; and the intention of the parties is not to be shown, to change it in any respect. *Owen & wife* v. *Foster, supra; Rich* v. *Elliot*, 10 Vt. 211; *Butler* v. *Gale*, 27 Vt. 739; *Robinson* v. *Miller, supra; Jenks et als.* v. *Morgan*, 6 Gray, 448; *Allen et ux.* v. *Kingsbury*, 16 Pick. 235; 7 U. S. Dig. 115, § 6, 160 § 169. The charge as it was given, allowed the jury to find from parol evidence, that

46

the intention of the parties was different from what was expressed in the deed itself; and in so doing, they were allowed to vary the terms of a written instrument by parol. The extent to which the rule goes in this direction is, to allow parol proof of the intention of the parties, when it is necessary to explain some latent ambiguity in the instrument itself. *Pingrey* v. *Watkins*, 17 Vt. 379. In this case there was no latent ambiguity which called for, or required, the introduction of any explanatory parol evidence. If a deed is so drawn as not to describe correctly the property intended to be conveyed, the remedy is to get it reformed in a court of chancery. *Carman* v. *Irwin*, 5 Hill, 272.

The court erred in not allowing the plaintiff full costs. The plaintiff was entitled to full costs by statute, if upon the trial of the issue " the right of title or possession" of any of the land " come in question." Gen. Sts. 726, § 22. In this case, the pleadings put the title to land in issue; and upon the first jury trial, as appears from the exceptions, the defendant claimed the title to the land upon which the maple tree stood—that the true line run north of it—and so continued to claim until the last trial was in progress, when his concession to the contrary must be presumed to have resulted from the fact that the plaintiff's evidence was so conclusive upon this point, that he thought it useless to contend against it a second time. Upon the first trial, the plaintiff was required to and did show title and possession to the land where the tree was cut—and was obliged to and did incur the same expense in order to come prepared to show the same at the second trial. These facts entitle the plaintiff to recover full costs; and bring the case within the reasoning of the rule laid down by REDFIELD, J., in *Powers et al.* v. *Leach*, 22 Vt. 226.

*R. H. Start* and *A. C. Dixon*, for the defendant.

In the construction of deeds upon questions of boundary, the following rules appear to be well established.

1. Where natural or artificial monuments are referred to or called for by the deed, and it also contains calls for courses and distances, such monuments, if known or can be ascertained, control the calls for courses and distances.

2. In cases where the deed contains only calls for courses and distances, without reference to or calls for monuments, and it appears that previous to or at the time of the making of such deed, the lines or boundaries of the tract intended to be conveyed, have been established, and marked upon the land by monuments, by an actual survey, or otherwise, the lines or boundaries thus established, will control the calls for courses and distances.

The case at bar falls within either the first or second rule. If there are doubts as to its coming within the first, we insist that it clearly comes within the second. But we claim it comes within the first. In *Park* v. *Pratt & Riddle*, 38 Vt. 550, it was held that monuments referred to in a deed, when ascertained, control courses or points of compass called for in the deed. The plaintiff's deed refers and calls for a corner at the beginning and at the terminus of the controverted line. The case shows that the beginning and terminus of said line was established, and indicated by a stake and stones, which were known monuments down to 1869. Hence, we insist that the call in said deed for a corner, is a reference to a monument, and, when ascertained, must control the courses and distances called for. Again, we say that when the plaintiff's deed calls for a corner at each end of the controverted line, it calls for a boundary, established and known, or calls for monuments, which when ascertained as they have been in this case, control the course and distances called for. *Keenan* v. *Cavanaugh*, 44 Vt. 268.

But, if we have failed to bring this case within the first rule, we insist it clearly comes within the second. *Blaisdell* v. *Bissell*, 6 Barr, 258 ; *Dawson* v. *Mills*, 33 Penn. St. 302 ; *Hall* v. *Davis*, 36 N. H., 571 ; *Wells* v. *Iron Company*, 48 N. H. 491 ; *Ogden et al.* v. *Porterfield*, 34 Penn. St. 191 ; *Younkin* v. *Cowan*, 34 Penn. St. 198 ; *Quinn* v. *Hart et al.* 43 Penn. St. 337 ; *Riley* v. *Griffin*, 16 Ga. 141 ; 2 Washb. Real Prop. 673, *et seq.*

The decision of the court below on the question of costs was correct. The question between the parties being one of boundary, merely, and not of title or right of possession, the plaintiff is restricted from recovering more cost than damages. Gen. Sts.

ch. 125, § 22; *Powers et al.* v. *Leach, supra; Brainerd* v. *Casey et al.* 37 Vt. 479.

The opinion of the court was delivered by

BARRETT, J.   I.   The line in dispute, according to the description in the deed, is from *a corner*, on a given course, a given number of rods, to *a corner*.   The deed does not say whether those corners were marked on the land.   If they were not marked, then they would be found by following the courses and distances given in the deed.   If they were marked, then they would be found 'by finding the monuments by which they were marked. The language of the deed is as consistent with their being marked, as not marked.   It was therefore doubtful on that language, whether they were marked or not.   It was proper to give evidence to solve that doubt—and no objection or exception was taken to the giving of such evidence.   That evidence showed that those corners were in fact marked by monuments.   Being thus established, the authentic boundary would be a straight line from one corner to the other, notwithstanding it did not conform to the course and distance named in the deed.   In this case such straight line was marked by marked trees.   This fact was also legitimate, as tending to show the marked corners called for by the deed, and was in harmony with the legal rule, that in such case the line between such corners is a straight line.   6 Gray, 448 ; 16 Pick. 235.   The matter was treated in the charge in full regard to the law, as stated and applied in all the cases cited on the subject.

II.   'As to costs.   It would seem that " the right of title and possession" was involved in the first trial.   Both parties claimed to own the land in dispute, and the right was to be determined by fixing the true line between them.   This would come within what is meant by that expression in the statute.   See *Powers* v. *Leach*, 22 Vt. 226, in which the true idea of the subject is developed and illustrated.   On the first trial, no such question was made. We do not find occasion to decide whether the right to be allowed full costs, is to depend on the coming in question of the right of title, &c., on the final trial, or on its coming in question at any

stage in the course of the litigation. In § 18 ch. 33, Gen. Sts., it is provided that the court may make order as to the allowance of costs, in their discretion, where only *nominal* damages are recovered. As the case is before us, it is not apparent that the court did not act on the subject of 'costs under that provision. The exception in § 22, ch. 125, Gen. Sts., does not withdraw the subject, in a call like this, from the scope and effect of § 18, *supra*. The case therefore does not show that the court committed any error in point of law, in the order as to costs. It would need to be very plain on the face of the bill of exceptions, that such error had been committed, in order for this court to be warranted in reversing the judgment as to costs.

Judgment affirmed.