# BENNINGTON COUNTY.

## AMES *v.* BECKLEY AND OTHERS.

*Ejectment.   Adverse Possession.*

Any entry or acts of possession of one of several legatees, or of any one claiming un-
der such legatee, down to the distribution of the real estate in pursuance of the will,
whether with or without color or claim of title, cannot be operative towards gaining
a title by adverse possession. They would be consistent with such legatee's rela-
tions as tenant in common with the other legatees, and construed as done in pursu-
ance of his rights and relations as such tenant in common.

When both parties claim title from the same person, neither can dispute the title of
such person.

*Held,* that if defendants would stand on adverse possession, as it was shown that
plaintiff had full color of title, and was doing continuously such acts of possession
under such color as would constitute possession in fact as against a person without
title or better right, it would be necessary for defendants to show a better title, in
order to give their contemporaneous acts efficacy as against plaintiff.

EJECTMENT for land in Pownal "known as No. 55 in the sixth
division." The ouster was laid on Dec. 2d, 1865; the writ dated
June 6th, and served Oct. 26th, 1867. Plea, not guilty, and trial
by jury, December Term, 1874, WHEELER, J., presiding.

Plaintiff, without first showing the existence or loss of the orig-
inal charter, offered in evidence a paper purporting to be a certi-
fied copy from the secretary of state of New Hampshire, under the
seal of that state, of the record of the charter of the town of
Pownal, dated Jan. 28, 1760; to the admission of which the de-
fendants objected, because they claimed that the official capacity
of the person assuming to act as secretary of state, was not veri-
fied or authenticated by the governor, nor by any other proper offi-

cer ; and also because the paper was not verified or certified in accordance with the laws of the United States. The court, upon inspection of the paper, without other proof, overruled the objections and admitted the paper in evidence, to which defendants excepted. By said copy it appeared that Joel Wells was an original proprietor, and plaintiff offered in evidence a copy from the town clerk's office of Pownal, of the record of a deed from Joel Wells to John Hosford, dated May 10, 1760 ; to the admission of which defendants objected, because they claimed that the deed was never recorded ; and there was no evidence that it was ever recorded in said town clerk's office, except such as appeared from the certifi- cates thereon. The court, upon inspection of said copy (defend- ants having stipulated not to object to the admission of said copy on account of any defect in the town clerk's certificate), and without other evidence, overruled the objection, and admitted the copy ; to which defendants excepted. The plaintiff also intro- duced copies of deeds as follows: John Hosford to David Page, dated June 14, 1786 ; David Page to Thomas Virgil Page, dated Feb. 12, 1799 ; and Thomas Virgil Page to Josiah Wright, Sen., dated May 6, 1811. Plaintiff also offered the proprietors' records, to show a sixth division, allotting No. 55 to Joel Wells on June 24, 1797, at a meeting adjourned from time to time from Nov. 23, 1795 ; to the admission of which defendants objected, because they claimed that there was no sufficient warning of the meeting, and because there was another and prior draft shown by the same records, in which Joel Wells was allotted No. 28. It was claimed by plaintiff that it appeared by the proprietors' records that after the prior draft, at an adjourned meeting, and before final adjournment, all proceedings in said prior draft were recon- sidered, and by vote of the proprietors a new draft was made, in which lot 55 fell to the right of Joel Wells. There was no proof that any proprietor, or the grantee of any proprietor, ever did or did not claim to hold any land under said prior draft. The court, upon inspection of said proprietors' records, overruled the objec- tions and admitted the records in evidence ; to which defendants excepted. Plaintiff also offered in evidence a copy of the will of said Josiah Wright, Sen., dated Jan. 24, 1816, proved on the first

Monday in Feb. 1817, by which the demanded premises were not specifically disposed of, but whereby it was declared that the testator's debts were to be paid out of the personal property and the wild lands, or other lands not disposed of. Also a copy of the executor's bond, dated Feb. 12, 1817 ; to which defendants objected, because they claimed that the records did not show that the executor accepted the trust, nor that it was imposed upon him. The court overruled the objection and admitted the evidence ; to which defendants excepted.

Plaintiff also offered in evidence a copy of a license to the executor, dated Oct. 11, 1852, to sell the lands of the testator for the payment of debts ; and also a copy of the record of the executor's return of sale, dated Oct. 18, 1852, stating that lot No. 55, sixth division, was sold to Joseph Wright ; together with the executor's deed to Joseph W. Wright, dated April 9, 1853 ; to each of which defendants objected, because they claimed that after the lapse of time shown in this case, the executor had no lien upon this property, or upon any of the estate of the testator. The court overruled the objections, and admitted the papers offered ; to which defendants excepted.

It appeared from the cross-examination of witnesses who gave testimony on the part of plaintiff, that before Joseph W. Wright purchased said lot of said executor, he had seen John Wright's survey (hereinafter mentioned) on record, and had heard and knew that said John claimed to own said lot ; that one Scovill wanted said Joseph to buy the lands ; that Joseph told said Scovill the lands were cheap, and he must not expect to hold the whole of them ; to which Scovill replied, if there were other claimants, and if they were not too high, he would buy them in ; and that this conversation with Scovill had reference to all the lands bought by said Joseph for said Scovill, of which lot 55 was a part.

The plaintiff introduced in evidence a copy of deed, John Wright to Josiah Wright, Jr., dated Feb. 6, 1837, of all the interest of the grantor by virtue of will or heirship in the estate of Josiah Wright, Sen., deceased ; a copy of deed, Joseph W. Wright to Horatio Ames, dated March 21, 1861 ; a copy of deed,

Horatio Ames to John Campbell, dated April 3, 1861, of an un-divided half of lot 55; a deed, Horatio Ames to the plaintiff, dated April 3, 1861, of the other half; and a deed of John Campbell to the plaintiff, dated Nov. 18, 1863; thus claiming title to the whole of the demanded premises.

Plaintiff gave parol evidence tending to show that a witness called by him had a paper purporting to be a plan of the sixth division; that witness had seen other similar plans, and had known one forty years; and that there was once for many years a plan in the town clerk's office, called the original plan of the sixth division, agree-ing with the witness's plan, that the town clerk claimed to be his private property, and took away from the office when he ceased to be town clerk; that witness could not state how long he had had the plan; that it was drawn from the said plan so in the town clerk's office; that the plan thus in the town clerk's office was used by the witness and others to find sixth-division lots by. Plaintiff offered said paper purporting to be a plan, to which de-fendants objected, because it was not shown to be a public paper, nor a copy of a public document. The court overruled the ob-jection, and admitted the paper for the purpose of proving the contents of the plan thus in the town clerk's office; to which de-fendants excepted.

There was no evidence of any acts of ownership upon lot 55 by said Josiah Wright, Sen., or by any of his grantors. Plaintiff, having given in evidence various facts tending to show possession of the demanded premises and ownership thereof by Josiah Wright, Jr., from between thirty-five and forty years ago to the time when he sold to Joseph W. Wright, and acts of possession by Joseph W. Wright and by the plaintiff; and having proved possession by defendants under said John and the defendant Sabin, and the amount of damages, rested his case.

Defendants gave in evidence a survey made by one Gardner for John Wright, of the premises in question, dated and recorded January 8, 1849; and a deed of the same by John Wright to the defendant Sabin and two others, dated April 12, 1855; and of-fered to prove that said John Wright, previous to January 8, 1849, told witness where said lot 55 was situated, and how it was

bounded, and also stated that he was the owner of it, and that said John was now dead. On objection by plaintiff, the court excluded the evidence; to which defendants excepted. Defendants offered to prove by a witness that when the said license was applied for, and was about to be granted by the Probate Court, said Josiah, Jr., and said John, who were brothers and both now dead, and the witness, were present in the Probate Court, and that said John was there to object to the license being granted to sell this particular lot of land, because he said it was his; that said Josiah, Jr., said he did not care anything about that, because it was said John's land, and he did not propose to sell it; that he conceded on that occasion the title to the lot in question to be in said John; that thereupon said John withdrew his objection, and the license was granted. On objection by plaintiff the court excluded the evidence; to which defendants excepted.

Defendants, having shown that said John Wright was one of the heirs of said Josiah, Sen., offered to prove by parol that said John and others under him, by contract made in 1823, went on to lot 55 in 1824, and cut timber for a barn and other purposes; and that said John and others under him made repeated cuttings upon said lot from time to time, to the date of said survey in 1849, during all that time said John claiming said lot to be his; also, that the persons who did those acts knew of no other claimant of said lot than said John; that said Josiah, Jr., on one occasion, in sight of said lot, pointed to the lot, and said that John owned it; and that on another occasion, in talking with other men about the pines on said lot, and wanting some himself, said Josiah, Jr., said he would see John, and ascertain if he would allow him to get some of them, and that subsequently he did see John, and by his permission, some pines were afterwards cut upon the lot for said Josiah. On objection by plaintiff, the court admitted so much only of this evidence as would show that Josiah, Jr., got leave of John to do some of the very cutting that the plaintiff had put in evidence, and excluded the rest; to which defendants excepted. Defendants offered to prove by parol, that on another occasion, when Josiah, Jr., was on said lot, he said that the lot then belonged to said John, and that this was after John's survey was on

record.   On objection by plaintiff the court excluded the same;
to which defendants excepted.

The defendants gave evidence of various and repeated acts of
possession and ownership by said John from 1849 to 1855, and
by defendant Sabin since that time, until the commencement of
this suit.   Defendants also introduced the probate records in the
matter of the estate of Josiah Wright, Sen., to be used by either
party ; by which it appeared that Josiah, Jr., did act as executor
of the will of the testator, and that John Wright, under whom the
defendants claim title to the land in question, appealed from the
allowance of an administration account by the Probate Court in
1834.   It did not appear by said records that any distribution to
heirs or devisees had ever been made of the estate ; and the plain-
tiff claimed that at the time of the license to sell in 1852, admin-
istration had never been closed.   Defendants also gave in evidence
the record of a deed from Josiah Wright, Jr., to Noel Barber,
dated June 21, 1843, of all the grantor's lands in Pownal.

Defendants claimed that plaintiff had not identified the lot in
their possession as the lot to which plaintiff's evidence tended to
show he had title; and insisted that the same evidence that
tended to show title in Josiah Wright, Sen., and a severance of
lot 55 to the right of Joel Wells, would inure to the benefit of
said John Wright, and would render applicable the evidence of-
fered as to his claim of title to, and his acts of ownership over,
the same lot.   The court declined to take this view of the case,
and ruled otherwise; to which defendants excepted.

The land in controversy, and the land all around it, is wild
mountain land, wholly unfenced, and not cultivated nor cleared
except in spots, and with no marked lines about it except lines of
marked trees, which the evidence tended to show were plainly
made with the corner, trees " cornered and marked," and that
said lines were visible, and were found by said John Wright in
1824, and again when he made his aforesaid survey in 1849.
There was other evidence tending to show the lot in question to
be lot 55, in the sixth division.

Upon the whole case thus detailed and stated, the court ruled
and held that there was nothing to submit to the jury except iden-

tity of the demanded premises and the damages ; and charged the jury that they might consider the plan before admitted in evidence, as evidence of what the other plan in the town clerk's office really was, and that they were not to consider that at all, unless they found the plan in the town clerk's office to have been a part of the archives of the town relating to the land titles of the town. To all which rulings, and to the charge aforesaid, defendants excepted. Verdict for plaintiff.

*G. W. Harman,* for defendants.

*W. S. Southworth* and *A. Potter,* for plaintiff.

The opinion of the court was delivered by

BARRETT, J. Several points were made and debated in the argument, which, in the view we take as to certain controlling features of the case, are not necessary to be passed upon in order to the decision of the case. Those views result from grounds so well established in the law as not to require discussion or the citing of books.

It is claimed by the defendants that the lot in question is the one into which John Wright entered in 1823, and that he entered in virtue of his right under the will of his father. It was designated and known as No. 55, under a certain supposed division called the 6th ; and no other land in the town was designated in that way. Nothing is shown to the contrary of this. This identifies the territory which is claimed by the plaintiff under title derived from said Josiah, Sen., as being the same that is claimed by the defendants under title derived from said John, or acquired by adverse possession in virtue of the survey and claim made by said John in 1849.

Whatever right said John derived from his father, was subject to the results of administration according to his father's will ; and until distribution should be made, his right was only that of tenant in common with the others who had like title and interest. Hence, any entry and acts of his, or of anybody under him, down to the disposition of the real estate in pursuance of the will, could

51

not have been operative towards gaining a title by adverse possession. They would have been consistent with his relation as tenant in common, and to be construed as having been done in pursuance of his rights and relations as tenant in common.

The recording of the survey in 1849 was the first indication of a claim by him in severalty and exclusively of the lot in question; and that claim should be referred to his title and right as legatee under the said will. Acts of possession, either with or without color or claim of title, could not inure to the gaining of title so long as the property was subject to being appropriated to the payment of the debts of the testator. The property was so subject, and was in fact appropriated by the deed of the executor, lawfully authorized, in 1853.

Hence the commencement of adverse possession could not date earlier than the giving of that deed, and, at most, could have effect only against those holding title under that deed. From that time to the bringing of this suit was less than fifteen years. Wherefore no title could have been acquired in that way.

So far as the defendants sought to derive title from the same source as the plaintiff, viz. Josiah, Sen.—the plaintiff through his executor, the defendants through John as legatee—they would be precluded from all questions as to the validity of the title of said Josiah, Sen., and so the points made on that subject become immaterial.

If the defendants would stand on adverse possession, as it was shown that the plaintiff had full color of title, and was doing continuously such acts of possession under such color as would constitute possession in fact as against a person without title or better right, it would be necessary for the defendants to show a better title in order to give their contemporaneous acts efficacy as against the plaintiff. This would not impose on the plaintiff the burden of showing his proper title to be authentic and valid. Hence the questions on that score were immaterial.

As no error is discovered that affects the judgment, the judgment is affirmed.