[See 6 Fed. 706.]

## Case No. 9,530.

### MICKEY v. STRATTON.

[5 Sawy. 475; 11 Chi. Leg. News, 314.] [1]

Circuit Court, D. Oregon.　May 5, 1879.

DEED OF CORPORATION—POSSESSION—TITLE—JUDGMENT—ATTACHMENT—SERVICE—CONSPICUOUS PLACE.

1. The signatures of the proper officers appearing to an instrument purporting to be the deed of a corporation, the presumption is that such instrument was signed by them by authority of the corporation; and if the seal of the corporation is upon such instrument, that itself is prima facie evidence of their authority to sign.

2. Possession is prima facie evidence of title, and proof of prior possession is sufficient to maintain ejectment against a mere trespasser.

3. When both parties in ejectment claim title from the same person, neither is at liberty to deny that such person had title.

[Approved in McDonald v. Hannah, 8 C. C. A. 426, 59 Fed. 978.]

[Cited in Smith v. Laatsch, 114 Ill. 273, 2 N. E. 59.]

4. A personal judgment for money or damages in a state court against an absent defendant who did not appear in the action, is so far a nullity.

5. By a valid attachment of property within its jurisdiction a state court acquires jurisdiction to give judgment that an absent defendant not otherwise served with process in the proceeding is indebted to the plaintiff therein, and to enforce the payment of the same by the sale of such property.

6. Where the statute authorizes a writ of attachment to be served upon real property by leaving a copy of the same with the occupant

thereof, "or if there be no occupant," then "in a conspicuous place" thereon, and it appears from the return that the writ was served by posting a copy on the premises without stating whether they were occupied or not: *Held*, that the service upon the premises was unauthorized and invalid, and that the judgment thereon was a nullity and the sale of the property attached void.

7. Semble, that a service of a writ of attachment by leaving a copy of the writ upon the premises is not good unless it appears that it was posted thereon "in a conspicuous place."

[8. Cited in Rickards v. Ladd, Case No. 11,804, to the point that an amendment to a return can in no way affect the rights of persons not parties to the suit, which rights were acquired in good faith before the amendment was made.]

Action [by Robert Mickey against Julius A. Stratton] to recover possession of real property.

Addison C. Gibbs, W. Scott Beebee, and J. Quinn Thornton, for plaintiff.

Rufus Mallory and W. W. Thayer, for defendant.

DEADY, District Judge. This action is brought to recover the possession of the east half of lots 1 and 2 in block 20, and the whole of block 15, in the town of Salem, and damages for the detention of the same.

The complaint alleges that the plaintiff is a citizen of the state of Pennsylvania and the defendant of the state of Oregon; that the plaintiff is the owner in fee of the premises, and entitled to the possession of the same, which the defendant wrongfully withholds from him to his damage five hundred dollars; and that the premises are of the value of four thousand dollars.

The defendant by his answer denies the allegations of the complaint except as to the value of the property, and pleads title and right to the possession of the premises in Parrish L. Willis, which plea the plaintiff by his replication denies. The case was heard by the court without the intervention of a jury.

The premises are situated in township 7 south, of range 3 west, of the Wallamet meridian, and within the husband's half of the donation claim of William H. Willson and Chloe his wife. The "claim" was occupied by them in 1844, and claimed by Willson as a settler under the donation act in February, 1852, as appears by his notification, number forty-seven. On February 4, 1862, in pursuance of the surveyor-general's certificate, number twenty, a patent to the donation issued to Willson and wife—the south half to the husband and the north one to the wife.

On July 30, 1855, Willson and wife, in consideration of the sum of one hundred dollars, duly conveyed the east half of lots 1 and 2 aforesaid to George Lesley, who upon December 4, 1857, in consideration of the sum of two hundred dollars, duly conveyed the same to George K. Shiel.

On December 2, 1854, said Willson and wife duly conveyed sundry blocks and parcels of

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 11 Chi. Leg. News, 314, contains only a partial report.]

land situate within said Willson's half of said donation claim, including block 15 aforesaid, to "the trustees of the Wallamet University," for the "endowment and support" of the same, with the right "to sell or otherwise dispose" of the same for such purpose; and on June 11, 1857, David Leslie, as "president" of said "board of trustees," and Francis S. Hoyt, as "secretary" of the same, in consideration of the sum of seven hundred dollars, and in the name of "the trustees of Wallamet University," executed a deed to George K. Shiel for the block 15 aforesaid, the same being described therein by metes and bounds, and alleged to contain two and six hundred and twenty-five thousandths acres, "more or less."

This deed purports to be signed and sealed, and there is a scrawl or private seal at the end and right of the names of the president and secretary respectively. There is also what appears to be a corporation seal, but the same does not otherwise purport to have been affixed by the secretary. On the same day that it was signed this deed was duly acknowledged by said Leslie and Hoyt as president and secretary, as aforesaid, before J. G. Wilson, clerk of the supreme court.

The trustees of the Wallamet University were incorporated by an act of the territorial legislature, passed January 12, 1853. By section two of the same they were authorized to have and use a common seal, "impressed with such devices and inscriptions as they shall deem proper, by which said seal all deeds * * * of said corporation shall pass and be authenticated." By section four it was further provided: "That all deeds and other instruments of conveyance shall be made by the order of the board of trustees, sealed with the seal of the corporation, signed by the president, and by him acknowledged, in his official capacity, in order to insure their validity."

From the date of the incorporation of the trustees until after the date of this deed they used as their common seal the eagle face or reverse side of a twenty-dollar piece of gold, of the size and general similitude of the gold coin of the United States of that value, and inscribed around the margin—"San Francisco, California, twenty D."—and the seal upon this deed, although the impression is very indistinct and somewhat effaced, appears to have been made with this piece of gold; but it does not appear that there ever was any formal vote of said trustees adopting said piece of gold as the seal of the corporation.

On January 21, 1873, John Hughes commenced an action in the state circuit court for the county of Marion against said George K. Shiel, upon two promissory notes and an open account, wherein on March 11, 1873, he appears to have "recovered judgment," whatever that means, "against the defendant," by default. for the sum of three hundred and fifty-eight dollars and forty cents. with costs and disbursements; that by virtue of an execution issued thereon, the sheriff of said county,

on March 17, levied upon said premises, and on April 11, 1873, sold the same to said Parrish L. Willis, the east half of said lots 1 and 2, for two hundred dollars and said block 15 for two hundred and fifty dollars; and after due proceedings in the premises, including a confirmation of such sale, on August 11, 1873, made and delivered a deed of the premises to said Willis as said purchaser.

On March 20, 1878, George K. Shiel, for the consideration of one thousand and ninety-five dollars, bargained, sold and quitclaimed the premises to the plaintiff.

It is claimed by the defendant that the alleged deed of June 11, 1857, from the university to Shiel, is ineffectual as a conveyance of said block 15, because it does not appear that the same was made "by the order of the trustees," as provided in section 4 of the act of incorporation, or that it is sealed with the seal of the corporation, and therefore the grantor of the plaintiff never acquired the title to such block.

But I find that the seal upon this deed is that of the corporation at that date. This being so, and the signatures of the proper officers appearing signed thereto, the presumption is that these officers did not exceed their authority in this respect; and the seal itself is prima facie evidence of their authority. Ang. & A. Corp. § 224; Koehler v. Black River F. I. Co., 2 Black [67 U. S.] 716.

But it appears from the evidence that Shiel was in possession of the premises under this deed until the conveyance by the sheriff to Parrish, under which the defendant entered. Possession is always prima facie evidence of title and proof of prior possession is sufficient to maintain ejectment against a mere trespasser. Tyler, Ej. 73; Day v. Alverson, 9 Wend. 233; Hutchinson v. Perley, 4 Cal. 34; Hicks v. Davis, Id. 69; Winans v. Christy, Id. 78; Bequette v. Caulfield, Id. 278; Marshall v. Shafter, 32 Cal. 194; Turner v. Aldridge [Case No. 14,249]; Christy v. Scott, 14 How. [55 U. S.] 290; Jones v. Easley, 53 Ga. 455; Oregon Cascades R. Co. v. Oregon Steam Nav. Co., 3 Or. 178; Eagle Woolen Mills Co. v. Monteith, 2 Or. 282.

The deed from the sheriff to Willis is claimed to be invalid, and unless it is found to be sufficient the defendant is in as a mere trespasser and the plaintiff must prevail in this action upon the prior possession of his grantor, Shiel, without reference to the validity of the deed from the university to the latter.

But there is another and conclusive answer to this objection. The plaintiff and defendant both claim under Shiel, and it is not necessary for either to prove title farther back than him. The defendant sets up an estate in fee in Willis in the premises, to defeat a recovery by the plaintiff in this action, and if he has any interest therein upon the evidence, it is derived from Shiel by means of the sheriff's sale and deed. The plaintiff claims under Shiel also, by a conveyance subsequent to that of the sheriff. Neither is

therefore at liberty to deny Shiel's title at the time of the sheriff's sale. In Gaines v. New Orleans, 6 Wall. [73 U. S.] 715, the supreme court says: "The defendants, equally with the complainant, claim title from the same common source. This is clear from the pleadings and the proof. If, therefore, both parties claim title from the same person, neither is at liberty to deny that such person had title."

This rule is also maintained in Eagle Woolen Mills Co. v. Monteith, 2 Or. 282; Brown v. Brown, 45 Mo. 414; Fellows v Wise, 49 Mo. 352; Butcher v. Bogers, 60 Mo. 140; Ames v. Beckley, 48 Vt. 395; 2 Greenl. Ev. § 397. Greenleaf, supra, says: "Where both parties claim under the same third person, it is sufficient to prove the derivation of title from him, without proving his title."

The plaintiff, therefore, in effect admits that at the date of the sheriff's sale Shiel had a good title to the premises, which passed to the purchaser, unless the sale was void. But the plaintiff contends that this sale was void and inoperative because the court in Hughes v. Shiel did not acquire jurisdiction of either the person of the defendant or his property.

In that action service of the summons was ordered to be made by publication for six consecutive weeks in a weekly newspaper, upon the affidavit of Hughes to the effect that Shiel was then a non-resident of the state but had property therein; and upon the same day and upon a like affidavit a writ of attachment was issued against the property of Shiel in Marion county. The summons was published in the paper directed, six times, between January 24 and February 28, 1873, both days inclusive; and on January 23, 1873, the sheriff returned the attachment, indorsed, that on January 21 he levied upon and attached the premises in controversy "by posting copies of the within writ, certified to by me, on said block 15, and also on the building standing on the east half of lots 1 and 2."

Many objections are taken by the plaintiff to the regularity and effect of these proceedings by publication and attachment which it will not be necessary to consider. The action of Hughes v. Shiel was begun and terminated before the decision of Pennoyer v. Neff, 95 U. S. 719. By the ruling in that case, the service of the summons by publication, even if made as by the statute provided, did not give the court jurisdiction of the person of Shiel, and the judgment in the action, so far as it depends upon such service, is a nullity. The doctrine of the case is succinctly stated in the second syllabus: "A personal judgment is without any validity if it be rendered by a state court in an action upon a money-demand against a non-resident of the state who was served by a publication of summons, but upon whom no personal service of process within the state was made and who did not appear; and no title

to property passes by a sale under an execution issued upon such judgment."

In Hughes v. Shiel it was "adjudged" that the plaintiff "recover judgment against the defendant," and not some certain sum or thing of or from him. But taking this for a judgment rather than for an order for one, it is in form only a personal judgment given without service upon the defendant or his personal appearance, and is therefore so far a nullity.

But conceding this point, the defendant contends that the court acquired jurisdiction of the premises by means of the levy thereon of the attachment, and that the judgment, though personal in form, is sufficient to support the execution as to the sale of the property attached, citing Cooper v. Reynolds, 10 Wall. [77 U. S.] 315, in which it was held that a proceeding may be maintained by the attachment of an absent defendant's property to enforce the collection of a debt due by him, and that in such case where there is a valid writ and levy, a judgment of the court, an order of sale and a sale and sheriff's deed, the proceeding cannot be held void when questioned collaterally. Tried by this rule, if there was a valid levy in Hughes v. Shiel, so as to give the court jurisdiction, the subsequent proceedings, in my judgment, were sufficient. For although the judgment was personal in form and did not limit the relief to be obtained thereon to the sale of the property attached, yet such was the only use made of it. And although it is true that it did not directly authorize the sale of the premises to satisfy the sum found due Hughes, and that instead of a venditioni exponas or order of sale issuing to enforce the judgment by the sale of the property attached, an execution was issued against the property of the defendant generally, as upon a personal judgment for money, yet only the property actually attached was sold thereon; and notwithstanding the return of the sheriff shows that he levied the execution upon the property sold as if the same was not attached, yet that was merely an unauthorized and useless act, because the law provides that an execution against property, as to such as is already attached, is to be executed without any further levy or seizure, by simply selling the same (Civ. Code Or. § 280, subd. 2), which practically makes an execution in such case merely a venditioni exponas —an order of sale.

But was there a valid service or levy of the attachment upon these premises? In the case of real property the law provides that a writ of attachment shall be executed "by leaving with the occupant thereof, or if there be no occupant, in a conspicuous place thereon, a copy of the writ, certified by the sheriff." Civ. Code Or. § 147, subd. 1.

In Settlemier v. Sullivan, 97 U. S. 444, it was held that under subdivision 5, § 54, Civ. Code Or., which requires a summons to be served upon "the defendant personally, or if

he be not found," then upon some member of the family of a certain age, at his usual place of abode, a valid substituted service could not be made unless the officer, using at least ordinary diligence, is unable to find the defendant in the county, and that fact must affirmatively appear from his return. Says Mr. Justice Field, who delivered the opinion of the court: "If it be admitted that substituted service of this kind upon some other member of the family is sufficient to give the court jurisdiction to render a personal judgment against its head, binding him to the payment of money or damages, it can only be where the condition upon which such service is permissible is shown to exist. The inability of the officer to find the defendant was not a fact to be inferred, but a fact to be affirmatively stated in the return."

In Trullinger v. Todd, 5 Or. 39, the court held a judgment entered in vacation void, for want of due service, where there was a return of substituted service of the summons, without an affirmative statement that the defendant could not be found, saying: "The statute * * * evidently implies that when a summons is placed in the hands of an officer for service, that he will use ordinary diligence, at least, to find the party against whom the summons is issued, in order that he may make personal service upon him; but after using ordinary diligence, if he should fail to find such party, constructive service may be made; and when such service is made, the certificate should contain the fact that the party could not be found."

Now, the analogy between these cases and the one at bar is complete. The service of an attachment, in case of real property, is required to be made by leaving a copy of the writ, "with the occupant thereof," but "if there be no occupant," then, and in that case only, by leaving such copy "in a conspicuous place thereon." The law is framed upon the reasonable assumption that the occupant represents the absent owner, and therefore it requires the service to be made upon him; and no substituted service, by leaving a copy of the writ on the premises, is permissible unless there is no one in the occupation of the premises upon whom service can be made, and that fact must appear from the return, or else the service upon its face is unauthorized and invalid.

The Civ. Code Or. § 160, provides that when the writ of attachment shall be fully executed or discharged, "the sheriff shall return the same with his proceedings indorsed thereon."

The return must state what was done, and the presumption that an officer has done his duty is not sufficient to supply a material fact or circumstance which does not appear in his return. For the law having made "it his duty to indorse his proceedings under the writ, thereon, the presumption that he did his duty applies as well to the making of the return as the service of the writ, and therefore there is no room to presume that he did his duty in making the service more fully or otherwise than he has stated in his return.

In Hughes v. Shiel the attachment was not alone a collateral proceeding to obtain a lien upon property as a security for the judgment which might be obtained therein, but it was also the very process upon the due service of which depended the jurisdiction of the court. In Cooper v. Reynolds, 10 Wall. [77 U. S.] 319, Mr. Justice Miller says: "Now, in this class of cases, on what does the jurisdiction of the court depend? It seems to us that the seizure of the property, or that which, in this case, is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely in rem. Without this the court can proceed no further; with it the court can proceed to subject that property to the demand of the plaintiff. If the writ of attachment is the lawful writ of the court, issued in proper form under the seal of the court, and if it is by the proper officer levied upon property liable to attachment, when such a writ is returned into court, the power of the court over the res is established."

Neither does it appear from the return that the copy left upon the premises was posted in a conspicuous place. As to the east half of lots 1 and 2 the return states that the copy was posted "on the building" thereon, but whether on the front or back, or the upper or lower story, or whether either was "a conspicuous place" on the premises does not appear, while as to block 15, it simply states that the copy was posted "on said block."

But it is not necessary to consider the effect of this omission. The return is radically defective because it does not appear therefrom that the premises were unoccupied at the time of this alleged service by leaving a copy of the writ upon the premises, and unless they were the sheriff had no authority to make such service. The writ of attachment being the only process by which the court could acquire jurisdiction, and there being no valid service of the same it follows necessarily that its judgment was a nullity and the sale upon the execution thereon is void. There must be a finding that the plaintiff is the owner of the premises and entitled to the possession of the same with nominal damages for the detention.