## FULLAM & ADAMS v. FOSTER & JAQUITH.

### January Term, 1896.

*Repugnant description. Conflict between courses and distances and monuments. Constructive possession. Color of title. Title necessary to maintain trespass.*

1.  Where the description of a survey is impossible and repugnant, its terms may ·be so modified as to give effect to the intention of the surveyor as expressed in.the survey.

2.  If there is a conflict between courses and distances upon the one hand, and fixed monuments and boundaries on the other, the latter prevail, and this is always so where the application of the rule effectuates the intention of the grantor as shown by the deed.

3.  Possession of a part, under a deed of an entire tract, gives constructive possession of the whole, unless the balance of the land·is in the actual possession of the true owner or some other person claiming title.

4.  A person so in possession may maintain trespass *quare clausum* for the entry upon that portion, of which he is in constructive possession.

Action upon R. L., s. 4206, to recover treble damages for the cutting of timber. Plea, the general issue. Trial by jury at the September term, 1893, Rutland county, TYLER, J., presiding. Verdict and judgment for the plaintiffs. The defendants except.

*J. C. Baker* and *C. L. Howe* for the defendants.

The question of adverse possession should have been sub-

mitted to the jury. *Brown* v. *Edson*, 22 Vt. 357; *Buck* v. *Squires*, 23 Vt. 498; *Barlow* v. *Brown*, Bray, 135; *Jakeway* v. *Barrett*, 38 Vt. 323; *Hodges* v. *Eddy*, 38 Vt. 327; *Webb* v. *Richardson*, 42 Vt. 465; *Beach* v. *Fay*, 46 Vt. 337; *Aldrich* v. *Griffith*, 66 Vt. 390; *Beach* v. *Sutton*, 5 Vt. 209; *Plimpton* v. *Converse*, 42 Vt. 712; *Soule* v. *Barlow*, 49 Vt. 329; *Wood* v. *Coal Co.*, 84 Ala. 560; *Webb* v. *Richardson*, 42 Vt. 465; *Spear* v. *Ralph*, 14 Vt. 400; *Hale* v. *Rick*, 48 Vt. 217; *State* v. *Hopkins*, 56 Vt. 261.

*W. W. Stickney* and *J. G. Sargent* for the plaintiffs.

Prior possession is sufficient title to maintain trespass against a stranger, 2 Wat., Tres. 346; *Ellithrop* v. *Dewing*, 1 D. Chip. 141; *Sawyer* v. *Newland*, 9 Vt. 383; *Sturgis* v. *Warren*, 11 Vt. 433; *McGrady* v. *Miller*, 14 Vt. 128; *Hibbard* v. *Foster*, 24 Vt. 542; *Austin* v. *Bailey*, 37 Vt. 219; *Ames* v. *Beckley*, 48 Vt. 395.

If the description of a deed is inconsistent, that part which is manifestly wrong should be rejected. *Gates* v. *Lewis*, 7 Vt. 511; *Hall* v. *Eaton*, 139 Mass. 217; *Bordman* v. *Reed*, 6 Pet. 328; *Chandler* v. *Greene*, 69 Me. 350; *Anderson* v. *Baughman*, 7 Mich. 69.

The intention of the parties as evidenced by the deed must always determine the location of the granted premises. *Gilman* v. *Smith*, 12 Vt. 150; *Barnard* v. *Russell*, 19 Vt. 334; *Park* v. *Pratt*, 38 Vt. 545; *Clary* v. *McGlynn*, 46 Vt. 347; *Morrow* v. *Willard*, 30 Vt. 118; *Spiller* v. *Scribner*, 36 Vt. 246; *Bundy* v. *Morgan*, 45 Vt. 46; *Martin* v. *Carlin*, 19 Wis. 454; *Galvin* v. *Collins*, 128 Mass. 525; *Keenan* v. *Cavanaugh*, 44 Vt. 268.

The extent of a constructive possession under a deed is limited by the bounds given in the deed.

*Brown* v. *Edson*, 22 Vt. 357; *Shedd* v. *Powers*, 28 Vt. 652; *Wood* v. *Willard*, 37 Vt. 377; *Oatman* v. *Fowler*, 43 Vt. 462.

When one relies upon a naked possession without color of title he must show an actual possession.    *ragg* v. *Lawrence*, 65 Vt. 673 ; *Aldrich* v. *Griffith*, 66 Vt. 396.

THOMPSON, J.  This is an action founded upon R. L., s. 4206, to recover treble damages for cutting wood and timber, trees standing and growing, on land in the town of Mount Holly claimed to be owned by the plaintiffs.  The defendants claimed that the land in dispute is a part of the north end of the college lot, so called, owned by them ; and the plaintiffs claim that it is a tract of land next north of the college lot, and that the south line of the land in dispute is the north line of the college lot.

The defendants claim that the county court erred in not submitting to the jury the question whether they had acquired title to the land in dispute by adverse possession. This contention makes it necessary to determine the construction to be given to the description of the four hundred acre lot, so called, in the survey thereof by Joseph Crary, county surveyor, made June 16, 1795, and recorded March 10, 1808.  That description is as follows :

"Ludlow, 16th June, 1795.  Then surveyed for Mr. Josiah Fletcher 400 acres of land in said township with small allowance on the original right of William Lee, Joel Potter, Jared Lee, David Clark and David Clark, Jr.  Beginning at a spruce tree in Andover north line and about 30 or 40 rods from the southeast corner of a large tract of land lately surveyed to Doctor Asaph Fletcher, thence easterly on Andover north line about 470 rods to a beach tree at the southwest corner of a tract of land surveyed to Captain Miles Johnson, thence north 6 degrees east 160 rods to a spruce tree, thence north 56 degrees west on a parallel line with Andover 422 rods to a maple tree in the east line of the large tract aforesaid, thence south 24 degrees west 160 to ye begun bound and contains as aforesaid.  About 158 acres of said tract in the westerly line part is included within the bounds of Mount Holly. "

This description makes the north and south lines of this

lot parallel, and the east and west lines of equal length but not parallel.

It is apparent that the east and west lines are not of equal length,.and that there must be an error in the statement of some of the distances. There is no dispute as to the location of the south line and the southeast and southwest corners of this lot. In determining what part of this repugnant description shall. be rejected, effect should be given to the intention of the surveyor as shown on the face of the survey bill. *Gates* v. *Lewis*, 7 Vt. 511. · It is apparent that he intended this tract to contain four hundred acres "with small allowance," about one hundred and fifty-eight acres of which should be in Mount Holly, and that the north and south lines should be parallel, and that the south line should coincide with the north line of Andover. If the length of the west line is rejected, and it is taken to have been the intention to run from the maple tree standing at the west end of the north line, to the bound begun at, without regard to distance, the lot then contains about four hundred. acres, one hundred and fifty-eight and 45-1000 acres of which are in Mount Holly as stated in the survey.

Thus the quantity and location of the land is found without disturbing any of the other courses and distances. This result cannot. be obtained by retaining the length of the west line as stated in the survey. Hence the distance named in connection with the west line must be rejected as repugnant, and it must be taken to have been the intention to run that line without regard to distance, from the maple tree to the bound begun at, being the southwest corner of the four hundred acre lot, and a fixed monument.

In 1799, a part of Andover was taken to form the town of Weston, so that after that date about two hundred and sixty rods of the four hundred acre tract bordered on Weston instead of Andover.

The college lot was conveyed to Middlebury College by Josiah Fletcher, July 12, 1819, and in his deed was described as follows :

" Beginning at the southwest corner of a four hundred acre tract surveyed to Josiah Fletcher, June 16, 1795, and in Weston north line, thence easterly on said Weston town line 100 rods to a corner, thence north 6 degrees east and 160 rods to the north line of said before-mentioned tract of four hundred acres, thence north 56 degrees west 100 rods to the northwest corner of said tract, thence 160 rods to place of beginning and contains one hundred acres by measure."

All the deeds in the defendant's alleged chain of title contain this description, and it is the description of the college lot in their deed thereof from Sarah H. Ayers, dated May 31, 1886, and by virtue of which they claim title thereto by deed. If the north line of the college lot coincides with the north line of the four hundred acre tract, the land in dispute is not a part of the college lot, as the construction given to the survey of the four hundred acre lot, locates its north line in accordance with the claim of the plaintiffs.

It is well settled then when, in the description of land in a conveyance, courses and distances and also known boundaries or monuments are given to describe the same line, and there is a discrepancy between the courses or distances on the one hand, and the boundaries or the monuments on the other, the latter as a general rule, govern and control the former. This rule is always applicable when it effectuates the intent of the grantor as shown by the deed. *Beach* v. *Stearns,* 1 Aik. 325 ; *Gilman* v. *Smith,* 12 Vt. 150 ; *Barnard* v. *Russell,* 19 Vt. 334 ; *Morrow* v. *Willard,* 30 Vt. 118 ; *Spiller* v. *Scribner,* 36 Vt. 246 ; *Park* v. *Pratt,* 38 Vt. 545 ; *Keenan* v. *Cavanaugh,* 44 Vt. 268 ; *Bundy* v. *Morgan,* 45 Vt. 46 ; *Clary* v. *McGlynn,* 46 Vt. 347 ; *Grand Trunk Railway Co.* v. *Dyer,* 49 Vt. 74 ; *Wilder* v. *Davenport,* 58 Vt. 642 ; *Cummings* v. *Black & Covell,* 65 Vt. 76 ; *Graves* v. *Mattison,* 67 Vt. 630 ; *Martin* v.

*Carlin*, 19 Wis. 454, 88 Am. Dec. 696 and note; *Galvin*
v. *Collins*, 128 Mass. 525.

By the description of the college lot in Fletcher's deed, its
northwest and southwest corners and its north and south lines,
are made to coincide with the same corners and lines of the
four hundred acre tract, which were then established bound-
aries and monuments.   By measure, the distance between
the northwest and southwest corners of the four hundred
acre tract as the survey is construed, is about one hundred
and forty-three rods.   It is apparent that the grantor in-
tended to make the north line of the four hundred acre tract,
the north line of the college lot, and that line was such a
fixed and certain boundary, that it must prevail over the dis-
tances called for by the description of the east and west
lines of the college lot.   On trial below, the defendants did
not claim that the north end of the college lot projected
further north than the north line of the four hundred acre
tract, but they contended that that line was located so far
north as to include the disputed land within the boundaries
of the college lot.   The construction given to the survey of
the four hundred acre tract and to the defendants' deed, by
the court below, was correct, and the jury have found that
the disputed land was not included in the description of the
college lot, but was included in the land described in the
deed of the plaintiffs from Jacob G. Hovey, receiver, dated
September 16, 1887.   That deed makes the north line of
the defendants' land, being the college lot, the south line of
that part of the land therein described which includes the
land in dispute.   In the fall of 1887, immediately after the
execution and delivery of their deed by Hovey, the plain-
tiffs went into possession of the land therein described,
which had been surveyed and the lines located by the
parties to the deed.   That fall they cut timber on the dis-
puted land at the south line and near the center, and the fol-
lowing fall again cut timber upon it, beginning where they

left off the previous year. This deed gave them at least
color of title to the land therein described, and a possession
of a part thereof, claiming title to the whole under their
deed, gave them constructive possession of the whole unless
the land was in the actual possession of the true owner, or
some other person claiming title, at the time they took pos-
session of it. *Aldrich* v. *Griffith*, 66 Vt. 401 and the cases
there cited. At the time the plaintiffs took possession, the
defendants were not in the actual possession of the land in
dispute.

The possession of the plaintiffs is sufficient without show-
ing further title, to enable them to maintain this action
against the defendants, unless the latter are the owners of
the land in question. *Ellithorp* v. *Dewing*, 1 D. Chip.
141 ; *Sawyer* v. *Newland*, 9 Vt. 383 ; *Sturgess* v. *War-
ren*, 11 Vt. 433 ; *McGrady* v. *Miller*, 14 Vt. 128 ; *Hibbard*
v. *Foster*, 24 Vt. 542 ; *Austin* v. *Bailey*, 37 Vt. 219 ;
*Ames* v. *Beckley*, 48 Vt. 395.

The defendants base their claim to title to the land in
dispute by adverse possession, upon the alleged adverse
possession of one Gardner Carlton to whom Middlebury col-
lege conveyed the college lot, March 27, 1847. Carlton
took possession of that lot under his deed and performed
acts of ownership and possession upon the southwest part of
it. His deed gave him color of title to the college lot and the
evidence tended to show that he had constructive possession
of the whole of it, but such possession was limited by the
boundaries fixed by his deed, and would not extend to the
land in dispute which was not included therein.

" Where there is a paper title, as in this case, it requires
very distinct occupancy to extend the possession beyond the
limits described in the deed, inasmuch as the deed, while it
is notice of claim of title to the extent of the boundaries
therein set forth, is also a distinct disclaimer of any further
pretensions. " *Shedd* v. *Powers*, 28 Vt. 652.

The record does not show that Carlton or any one

else in the defendants' alleged chain of title ever did any act of possession or ownership upon the land in dispute. When the defendants went into the possession of the college lot under their deed, their constructive possession was limited by the boundaries described in it. Hence at the time of the committing of the alleged trespasses, the defendants did not have possession of the land in dispute, nor did they have title or color of title thereto, so far as appeared by the evidence. The case standing thus, the court below properly refused to submit to the jury the question of adverse title on the part of the defendants,

It was not error for the court below not to comply with the defendants' third request to charge the jury. Lot O on the Severance plan was not referred to in the plaintiffs' deed. As already stated, as the case stood, their possession of the land in dispute under color of title, was sufficient to enable them to maintain this action.

*Judgment affirmed.*