## GRAND TRUNK RAILWAY COMPANY *v.* DYER.

### *Construction of Deeds. Estoppel.*

The southerly line of the land described in plaintiff's deeds as 350 feet from the center line of a railroad, would cut fifty feet from the north side of defendant's two lots. Said deeds referred to a plan, which was recorded with the deeds, and defendant claimed that said plan indicated by its scale that the southerly line of plaintiff's land was intended to be 300 feet from the center line of the railroad, instead of 350 feet, and that this, and other extrinsic evidence, should control the construction of

the deeds. The deeds did not refer to the plan for angles, length of lines, nor distances, but rather as indicating the shape of the plot conveyed. They referred to certain letters on the plan as fixed points, but those points on the ground were determined by distances from the center line of the railroad, giving feet and figures. No monument upon the ground was referred to, and it did not appear that any existed. The location of the center line of the railroad was conceded. Both parties derived title from the same source, and plaintiff's deeds were first executed. *Held,* that the deeds could not be controlled by extrinsic evidence.

It appeared that other parties had built houses on other parts of the line claimed by defendant, 300 feet from the center line of the railroad, and had occupied and claimed title thereto for more than fifteen years, in all which plaintiff had acquiesced, and that if plaintiff's line was extended as claimed, it would cut fifty feet from the front of these lots and buildings. *Held,* that plaintiff was not thereby estopped as against defendant, from claiming that its line extended 350 feet from the center line of the railroad.

Said deeds described the land thereby conveyed by courses and distances, and declared it to contain 20.55 acres, *more or less.* The lines as claimed by plaintiff would include a little over 24 acres, and as claimed by defendant, 21.3 acres. *Held,* that the statement of quantity would not control the construction of the deed.

In 1852, the year in which the respective deeds under which the parties claimed were executed, the chief engineer of the railroad company to which the land claimed by plaintiff as lessee was originally deeded, sent the plan referred to in said deeds to E., a civil engineer in the employment of said company, directing him to mark the lines and courses indicated thereon, by placing sticks in the ground at such corners, which he did, placing them on the line claimed by defendant, around some of which he put stones. Nothing further was done to mark the boundaries of defendant's lots till 1860, when plaintiff put stone posts to mark the northerly line of said lots according to its claim of 350 feet from the center line of the railroad. *Held,* that these facts were extrinsic, and could have no connection with the legal construction of plaintiff's deeds, and that plaintiff was not thereby estopped.

EJECTMENT for land in Brighton. Plea, not guilty, and trial by jury, September Term, 1875, BARRETT, J., presiding.

Plaintiff gave in evidence a copy of a quit-claim deed from O. P. Chandler to the Atlantic & St. Lawrence R. R. Co., dated July 1, 1852, of an undivided half of certain land required for depot purposes at Island Pond, described as follows :

Commencing at a point in the center line of the Atlantic & St. Lawrence Railroad as now laid out, designated as station 848x85 (A on plan), and thence extending at right-angles to said line a distance of fifty feet on the upper or northerly side of said line (to B on plan) ; thence following along said center line, and gradually increasing in the distance of 192 feet, to a width of 245 feet (to C on plan); thence continuing said width of 245 feet for the distance of 350 feet (to D on plan); thence gradually decreasing in the distance of 175 feet, to a width of 150 feet (to E on plan); thence continuing said width of 150 feet along said

center line for the distance of 949 feet (to F on plan); thence gradually decreasing in the distance of 175 feet, to a width of fifty feet (to G on plan); thence continuing said width of 50 feet for a distance of 840 feet (to H on plan), to a point at a right-angle to a point in said center line known and designated as station 875x65; thence a distance of fifty feet to said station 875 x65; and also extending on the lower or southerly side of, and at right angles to, said center line at station 875x65, a distance of fifty feet (to I on plan); thence following back on a course parallel to a tangent at station 875x65 (to J on plan), at its intersection with a line parallel to a tangent between stations 850 and 65x49, and at a distance from said tangent of 350 feet; thence along said line to the shore of Island Pond (K on plan); thence along said shore to said center line (L on plan); containing 20.55 acres more or less.

Plaintiff also gave in evidence a copy of a quit-claim deed of same date, from John A. Poor to the Atlantic & St. Lawrence R. R. Co., of the other undivided half of the same land. Plaintiff held the title conveyed by said deeds, by virtue of a perpetual lease from the Atlantic & St. Lawrence R. R. Co., dated Aug. 5, 1853. The parties agreed as to the location of the center line of said railroad named in said deeds, and that it was marked by monuments thereon in the location and survey of said railroad theretofore made, and that the line described in said deeds as " following back on a course parallel to a tangent at station 875x65 (to J on plan), at its intersection with a line parallel to a tangent between stations 850 and 865x49, *and at a distance from said tangent of* 350 *feet*," would, if run at that distance, extend easterly and westerly across lots 1 and 2 in the village of Island Pond, as laid out on a plan made by one Goodwin, and would include fifty feet of the northerly portion of said lots within the terms of the description in said deeds.

Defendant gave said plan in evidence, and the copy of a joint deed from said Chandler and Poor to Hall and others, dated Oct. 28, 1852; and it was agreed that defendant held under said deed by valid title all of lots 1 and 2 that was not embraced in and conveyed by said deeds of Chandler and Poor to said Atlantic & St. Lawrence R. R. Co. A copy of the plan referred to in said last named deeds, the original whereof was recorded in the town

clerk's office with said deeds, was in evidence ; and it was shown that the line on said plan representing the southerly line of the land bounding said lots on the north, was only 300 feet from the center line of the railroad, and said plan as scaled, indicated the same distance. It was agreed that said center line was correctly marked on both of said plans, and is the same designated in said deeds last above named.

It was shown that said Goodwin's plan was made by the procurement of and for said Poor, before July 1, 1852, as the plotting of a prospective village ; that the territory therein indicated was then a wilderness, and that the only marks or monuments on it were the sticks marking the location of the center line of said railroad ; that some time in the season of 1852, the chief engineer of the railroad company sent said Goodwin's plan to one Edwards, a civil engineer in the employ of said company at Island Pond, and directed him to mark the lines and corners as represented by said plan, by putting down sticks in the ground at such corners, and he did so, and placed stones around some of said sticks. Nothing further was done marking the boundaries of lots 1 and 2, till 1860, when plaintiff put down some stone posts marking the northerly line of said lots according to its claim of 350 feet from said center line, instead of 300 feet as claimed by the defendant. From the time of the giving of said deeds of July 1, 1852, down to the time of the giving of said deed to Hall & others, Oct. 28, 1852, nothing was done as to said village territory, except as above stated. Said lots 1 and 2 have never been inclosed, but have lain open on the north, wherever the true southern boundary of the plaintiff's land may be ; nor has there been any such occupancy as would give title to either party by adverse possession. It appeared by computation that to fix said disputed line at 300 feet from said center line, would make the quantity of land under the plaintiff's deeds 21.3 acres, and to fix it at 350 feet, would make the quantity a little over 24 acres. Nothing further than is above stated was shown connecting the plaintiff or the Atlantic & St. Lawrence R. R. Co. with the Goodwin plan, nor was any evidence given as to the province, agency, or authority

of said engineers, except what consists in the fact of their being such engineers, and in what they did as above stated.

The plaintiff claimed title under the deeds it introduced and its lease according to the line 350 feet from said center line. The defendant claimed that the plaintiff was thereby entitled only to the territory embraced by said line at 300 feet from said center line, which line at 300 feet it was agreed would not embrace any of said lots 1 and 2. The court maintained the plaintiff's claim.

The defendant offered evidence, which was received under objection and exception by plaintiff, tending to show that on territory outside of lots 1 and 2, and laid out on said Goodwin plan as bounded on the north by a line in continuation of the north line of lots 1 and 2 as laid out on said plan, other parties had erected buildings more than 15 years before the bringing of this suit, and had ever since occupied up to said line as the northern boundary, without objection or hindrance by the plaintiff, and that the extension of said line of 350 feet from said center line as claimed by the plaintiff, would cut across said territory thus built upon and occupied, 50 feet south of said northern boundary thereof. The court held that this would not conclude the plaintiff as to its right in respect to lots 1 and 2, but would only be evidence bearing on the question as to where in point of fact the southern boundary of the plaintiff's land contiguous to lots 1 and 2 was located, as intended and understood by the parties to the deeds under which the plaintiff held at the time said deeds took effect. Under this ruling the defendant did not wish to go to the jury, there being no controversy about the other facts in the case, but excepted to said ruling. The court directed a verdict for the plaintiff.

The terms of the verdict describing the line found were agreed on by counsel, and were that plaintiff " recover of the defendant the seisin and possession of so much of said lots Nos. 1 and 2 as lies northerly of a line eastwardly and westwardly across said lots, at the distance of three hundred and fifty feet southwardly from the center line of the Grand Trunk, being formerly, and when located, called the Atlantic & St. Lawrence Railroad,

which said distance is fifty feet southwardly of the north line of said lots." Exceptions by defendant.

*Geo. W. Cahoon*, for defendant.

What land is embraced in the deed from Chandler and Poor to the Atlantic & St. Lawrence R. R. Co., is a question for the jury. Whether certain land is a part of what was conveyed by a deed, rests *in pais*, and is always a question for the jury. *Hodges* v. *Strong*, 10 Vt. 247. Whether or not particular premises are included in the description in a deed, is a question to be decided by the jury, and may depend on facts other than those appearing on the face of the deed. The finding of the jury is conclusive; so that upon that point the court will not disturb the verdict upon a case stated. *Mitchell et al.* v. *Stevens*, 1 Aik. 16. The jury, in all questions of the right of property and in all cases of a general verdict, decide upon the facts and the law under the instruction of the court. *Rice* v. *Rice*, 21 Texas, 58.

1st. We claim that defendant was entitled to go to the jury on the evidence that the plaintiff's plan accompanying deeds called for just the land contained in Goodwin's survey up to and not including lots 1 and 2. 2d. That plaintiff's deeds call for 20.55 acres, and that the measurement of the company's land as claimed by defendant contains, 21.3 acres, and that to extend the line as claimed by plaintiff, would, as figured from the same plan by said Goodwin, make over twenty-four acres. 3d. Defendant's testimony tended to show that the plan annexed to plaintiff's deeds describing plaintiff's land thereby conveyed, was an exact miniature of Goodwin's plan reduced one half, the scale of said miniature plan being, as tested by said Goodwin and another engineer, Edwards, upon the trial, and as part of defendant's evidence, 100 feet to the half inch. 4th. That by the scale claimed by defendant as the correct one of said miniature plan, the southerly boundary line, the one in controversy, of plaintiff's premises, is only three hundred feet from the center line of the Atlantic & St. Lawrence Railroad mentioned in plaintiff's deeds. 5th. On the contemporaneous construction given by Chandler and Poor to their deed to defend-

ant's grantors.   6th.   On the acquiescence, for aught that ap-
pears, of the Atlantic & St. Lawrence Railway Co. in such
construction ; the causing of streets to be graded by them accord-
ing to the Goodwin plan and Edwards's stakes ; the improbability
of Chandler and Poor's selling off fifty feet of the frontage of the
lots in question, with no access to them, and subsequent sale of
said lots entire to defendant's grantors ; the fact that others were
suffered to build on adjoining lots occupying their frontage in the
same way, some occupying their lots to this day.   7th.   The
further fact that plaintiffs made no claim for some years after their
lease, as appears by the exceptions, is all proper evidence to go
to the jury to find where the true line is.   As to the location of a
division line, it was competent to show where former owners of
the land of defendant, through whom the defendant claimed title,
claimed the line to be   It is not essential that there should be
evidence that defendant, or his immediate grantors, ever recog-
nized, or had notice of, the particular division line made by such
former owner.   *Davis* v. *Judge,* 46 Vt. 655 ; *Prentiss* v. *Blake,*
34 Vt. 460.   8th.   That Edwards, a conceded agent of the At-
lantic & St. Lawrence R. R. Co., acted within the scope of his
authority in placing stakes at the corner of the company's land,
and had furnished him the Goodwin plan by the company for
that purpose, and that he placed the stakes in accordance there-
with on the line as claimed by defendant.   This act was fixing
known permanent monuments to the company's land, and like-
wise giving the contemporaneous construction said railroad com-
pany put upon the deeds from Chandler and Poor.   The principle
of law then applies with a twofold force, that known monuments
govern rather than courses and distances, and the court, if to
order a verdict at all, should have ordered it for the defendant.
9th.   If Edwards's authority to act in the premises was questioned
by plaintiff, then it was for the jury to determine its extent and
what he did.   It is a familiar principle of law, that principals are
estopped from denying the authority of agents acting within the
scope of their apparent powers.   10th.   If Edwards did put down
fixed monuments, and the jury find he had authority so to do, or
should find that " J," marked on plan, by the plan itself was but

300 feet, then the law applies that known monuments must govern rather than courses and distances. *Beach* v. *Stearns et ux.* 1 Aik. 325 ; *Hull* v. *Fuller,* 7 Vt. 100 ; *Gates* v. *Loomis,* 7 Vt. 512 ; *Park* v. *Pratt and Riddle,* 38 Vt. 545; *Morrow* v. *Willard,* 30 Vt. 118 ; *Keenan* v. *Cavanaugh,* 44 Vt. 268 ; *Spencer* v. *Robie,* Caledonia County ; *Bundy* v. *Morgan,* 45 Vt. 46 ; *Bagley* v. *Morrill et al.* 46 Vt. 94 ; *Clary* v. *McGlynn,* 46 Vt. 347.

II.   If not entitled to go to the jury, we claim by the facts found by the court as detailed by the exceptions, defendant was correct in his requests.   The legal construction and effect of plaintiff's deeds, the plan being a part of them, should have been given as requested by defendant, excluding the land in controversy.   The plan gives known monuments, " I," " J," and " K," corresponding exactly with Goodwin's plan as before stated, showing a distance in fact from the tangent named in going from " I " to " J " of 300 instead of 350 feet.   The identity of the subject-matter of the deed being shown by Edwards, and the conceded fact that he put down the stakes and stones at the time at these corners, it would seem that the only legal construction of plaintiff's deeds, upon the principles enunciated with reference to known monuments, is to exclude from said deeds the land in controversy.   The defendant was an innocent purchaser without notice.   Plaintiff's grantor had acquiesced in the monuments placed by Edwards and in the construction of its deeds, and that of defendant's grantors, as now claimed by defendant, and had not only allowed the stakes to be put down by Edwards, but allowed the street to be constructed and stores and buildings to be erected upon the line in continuation of the line as claimed by defendant long before he purchased.   Therefore, plaintiff is now estopped from claiming the land in controversy.   *Beatley* v. *Sweeny,* 26 Mich. 207 ; *Chester* v. *Buford,* 50 Mo. 278.

We insist that the case at bar is one where the doctrine of estoppel applies.   The continued silence of the Atlantic & St. Lawrence R. R. Co. which saw the land in question conveyed by Chandler and Poor to Hall and others, the continued silence of plaintiff after the lease, knowing defendant had purchased the

premises, now estops plaintiff from claiming said land.  A party claiming an interest in land, who sees it conveyed to others without objection or giving notice of his own claim, is estopped from afterwards setting .it up as against that conveyance.  *Cady* v. *Owen,* 34 Vt. 598.

*Geo. A. Bingham* and *Geo. N. Dale,* for plaintiff.

The exceptions raise two questions.  1. As to the effect of defendant's evidence tending to show that other parties had on other lots claimed and occupied for more than fifteen years to a line produced by the northerly continuation of the line of lots 1 and 2, as claimed by the defendant—the defendant claiming it to be conclusive evidence, and the court receiving it as evidence to be submitted to the jury bearing on the question where the true boundary line between the plaintiff and defendant was.  The plaintiff objected to the evidence as being incompetent for the purpose for which it was received.  The defendant waived his right to have it submitted to the jury, and the only question before the court on this point now is :  Was the evidence conclusive ?  The plaintiff submits that the evidence was not conclusive, and that the ruling of the court was correct.  *Hodges* v. *Eddy,* 38 Vt. 327, 347 ; *Day* v. *Wilder,* 47 Vt. 583, 591.

2.   The defendant having waived his right to submit to the jury the evidence referred to in the first proposition, and there being no dispute as to the other facts in the case, the only remaining question is :  Did the court err in holding that the plaintiff was entitled to recover the land sued for to the distance of 350 feet from the center line, and in ordering a verdict therefor, the line described in the verdict being agreed upon by counsel.  If the defendant was entitled to a verdict, he should have given evidence proving one at least of the four following propositions :  (1.) That his title deeds showed in him an older and better title than the plaintiff's.  This he entirely failed to do.  (2.) That he had title by deed or conveyance from plaintiff, which is not claimed.  (3.) That he had acquired title by adverse possession for more than fifteen years.  The case shows that neither party had acquired title by adverse possession.  (4.) That the parties had agreed to the line

claimed by the defendant, and had acquiesced in the same for fifteen years. This is without foundation, even if the evidence of Edwards should be held sufficient to show that the corners on the Goodwin plan were staked by the direction and with the knowledge of the plaintiff, intending thereby to make the line claimed by the defendant the true boundary line, which the plaintiff denies, because it is shown by the case that the line was not acquiesced in—that in 1860, the plaintiff put down stone posts marking their line as they now claim it, 350 feet from the centre line, and there has been no other act on the part of the plaintiff inconsistent with the claim to maintain that line from that time to the present. Hence there was no evidence tending to show an agreed line acquiesced in for fifteen years. This the law requires. *White* v. *Everest*, 1 Vt. 181, 188 ; *Burton* v. *Lazell*, 16 Vt. 158 ; *Ackley* v. *Buck*, 18 Vt. 395 ; *Clark* v. *Tabor*, 28 Vt. 222.

3. The fact that the land exceeded the quantity named in plaintiff's deeds, would not change the boundary when there was no ambiguity in the description of the land conveyed. *Hubbard* v. *Hurlburt*, 10 Vt. 173 ; *Gilman* v. *Smith*, 12 Vt. 150 ; *White* v. *Miller*, 22 Vt. 380 ; *Spiller* v. *Scribner*, 36 Vt. 245 ; *Morrow* v. *Willard*, 30 Vt. 118.

The opinion of the court was delivered by

REDFIELD, J.  This action is ejectment to recover possession of certain lands in the town of Brighton. Both parties derive their respective titles from O. P. Chandler and John A. Poor, the plaintiff's deeds having been executed at an earlier date. It is admitted that the southerly line of the land described in the plaintiff's deeds as 350 feet from the center line of the railroad, would cut fifty feet from defendant's lots numbered 1 and 2, on the north side. The court ruled that the plaintiff's deeds, having no ambiguity, but susceptible, on their face, of defining with accuracy the land conveyed, was not to be controlled by evidence *aliunde*, and that it was the province of the court, and not of the jury, to give construction to the deeds, and apply it to the land, the subject-matter of the conveyance. That such is the general rule of law and practice seems not to be denied in this case. But de-

fendant insists that the plaintiff's plan, recorded with the deeds, would indicate by its scale that the southern line was intended to be 300 feet from the center line of the railroad, instead of 350 feet, and that this, and other facts *aliunde*, should control the construction of the deed. The plan is not referred to in the deed for angles, lengths of lines, or distances, but rather as indicating the shape and form of the plot conveyed, for depot purposes. The deeds refer to certain letters on the plan as fixed points ; but those points on the ground are determined by *distance* from the center line of the railroad, giving feet and figures. No monument, fixed on the ground, is referred to, and none, so far as the case shows, ever existed. If a monument then existing had been referred to, and could now be found, it would dominate over all other evidence, and determine the boundaries of the grant, because that would be fixed and certain. In the absence of a fixed monument, the next most certain data by which a disputed point may be found, is *distance* from a fixed and certain object. The position of the center line of the railroad is conceded, and a point at right angles to such center line, at a certain station, and 350 feet distant therefrom, can be easily and accurately ascertained— it needs but the use of the chain to find it. And when data are given in a deed by which lines and corners can with certainty be found, they must control.

II. The case shows that other parties had built houses on other parts of the line claimed by defendant, 300 feet from the center line of the railroad, and had occupied and claimed title thereto for more than fifteen years, in all which plaintiff has acquiesced, and if plaintiff's line, as now claimed, was extended, it would cut off fifty feet of the front of their lots and buildings.

The defendant insisted that this fact was *conclusive* upon the plaintiff that the whole line was only 300 feet from the center line of the railroad. The court ruled otherwise, but allowed the fact to be proved to the jury as a circumstance to be weighed in the case. As the defendant declined to go to the jury upon the weight of the circumstance, no question of law is reserved, except the alleged error that the court ruled that such fact, if established, would

not *conclude* the plaintiff. We do not perceive upon what principle of law the plaintiff could be estopped from asserting, as against this defendant, the true boundary line of this land, by the fact that another party had trenched over the same line at another point, and occupied a portion of its land adversely for more than fifteen years. There is no claim that plaintiff represented such to be the true line, in faith of which defendant purchased lots numbered 1 and 2. Nor is any fact stated that would estop the plaintiff from asserting its right to the extent of its title as conveyed by its deeds; and it is the province of the court, and not of the jury, to construe and declare the legal interpretation of written instruments, especially those under seal. It was indeed a matter for the jury to locate the line, and the law declares that line to be 350 feet from a given and fixed point. Where that line is located there seems so little dispute that defendant declined to go to the jury.

III. The defendant insisted that the plaintiff shewed no title to the *locus in quo*, and that the court erred in directing a verdict for the plaintiff. Both parties derived their respective titles from a common source—Chandler and Poor; and the plaintiff's being prior in time, is superior in right, and a valid title as against this defendant. The line described in the verdict was conceded to be the true line, under the construction of the deeds that was given by the court, and there was no claim that the line indicated in the deeds had been changed by adverse occupation. There was, then, no controverted matter to be found by the jury, and the verdict was directed as a matter of law, from the legal force of the deeds.

IV. The deeds describe a plot of ground, and declare it to contain 20.55 acres, more or less. The lines claimed by plaintiff would inclose about twenty-four acres. It is claimed that *quantity* should control the construction of the deed. The quantity of land in a grant is often a matter of mere estimation; and where the description is by metes and bounds, quantity must yield to that which is more fixed and certain, and that is certain

that can be made certain. The compass varies by operation of time, and is swerved from its polarity by hidden agencies, which render it, in minute matters, vacillating and uncertain. Quantity alone gives neither shape nor form, and, applied to an irregular plot, would be subject to vary in area according to the different degrees of subtlety and accuracy in those who make the computation. But fixed objects remain so, and distance from that which is fixed and stable can be made certain; hence, by a well-settled rule of construction of deeds, that which is vacillating and doubtful must yield to that which is stable and certain. *Gilman* v. *Smith*, 12 Vt. 150; *Spiller* v *Scribner*, 36 Vt. 246; *Monroe* v. *Willard*, 30 Vt. 118.

The placing of stakes along the line claimed by defendant, and afterwards the placing of the stone posts along the plaintiff's line by the plaintiff's engineer, are facts — items of evidence — of more or less influence; and in connection with adverse occupation and long acquiescence, might have controlling weight. But they are extrinsic, and have no connection with the legal construction of the deed, and, as stated in the exceptions, could not work an estoppel.

Judgment affirmed.