# ALLEN L. GRAVES ET AL.

v.

# H. W. MATTISON.

May Term, 1895.

*Construction of deed.    Description.    Lateral support of adjoining lands.    Injunction.*

1.  The most important rule in the construction of deeds is that the intention of the grantor, if not unlawful, shall govern.

2.  A, being the owner of a tract of land, conveyed to B a parcel forty-seven feet wide from the westerly side.   The point of beginning was the  northwest corner and the deed located this as forty-five feet from the north-east corner· of a certain store.   Subsequently A conveyed to C a second parcel from the same tract easterly of and adjoining the first parcel.   The point of beginning in this deed was the northwest corner of the parcel which was described as ninety-one feet from the same store  corner, being the northeast corner of the first parcel.   The west line of the last parcel was described as running along the east line of the first parcel.   *Held*, that it was the manifest intention of the grantor that the west line of the second parcel should be coincident with the east line of the first parcel and that the ninety-one feet must be rejected as surplusage.

3.  A land owner is entitled to the lateral support of his soil in its natural condition, but not as to any artificial structure placed upon it.

4.  Therefore an injunction will not be granted to restrain a landowner from erecting the foundations of his building upon such a level that the adjoining owner cannot rebuild his foundations without removing the lateral support of the first.

Bill for an injunction.    Heard at the June term, Benning-ton county, 1894, upon the pleadings and a master's report. TAFT, chancellor, decreed for the orators.    The defendant appeals.

*J. C. Baker* for the orators.

The intention of the parties to a deed must govern.    *Clement* v. *Bank*, 61 Vt. 298; *Cummings* v. *Black*, 65 Vt. 76; *Robinson* v. *Railroad*, 59 Vt. 426.

The manifest intent here was that the west line of the first parcel and the east line of the second parcel should be the same, and those parts of the description which contradict this must be rejected.    *Sherwood* v. *Whitney*, 54 Conn. 330; *Flagg* v. *Eames*, 40 Vt. 16; *White* v. *Gay*, 9 N. H. 126; *Erskin* v. *Moulton*, 66 Me. 276; *Norwood* v. *Byrd*, 42 Am. Dec. 406; *Collins* v. *Lavelle*, 44 Vt. 230; *Blanchard* v. *Morey*, 56 Vt. 174.

One must so use his own property as not to injure another. If the defendants place their foundations as they have begun, the orators cannot reconstruct their walls.    *Fish* v. *Dodge*, 4 Denio 311; *Ross* v. *Butler*, 19 N. J. Eq. 294; *Cleveland* v. *Gas Light Co.*, 20 N. J. Eq. 201; *Heeg* v. *Licht*, 80 N. Y. 579; *Powder Co.* v. *Tierney*, 131 Ill. 322; *Russell* v. *Brown*, 63 Me. 203; *Canal Co.* v. *Hitchings*, 65 Me. 140; *Holmes* v. *Wilson*, 10 Ad. and E. 503.

Equity has jurisdiction.    Wood on Nuisances, s. 769 et. seq.; *Sullivan* v. *Royer*, 72 Cal. 248; *Canfield* v. *Andrews*, 54 Vt. 1; *Whipple* v. *Fair Haven*, 63 Vt. 221; *Trowbridge* v. *True*, 52 Conn. 190; 2 Beach, Injunctions, s. 1024.

*C. H. Darling* for the defendant.

One is only entitled to the lateral support of his soil in its natural condition.    *Thurston* v. *Hancock*, 12 Mass. 220;

*Gilmore* v. *Driscoll*, 122 Mass. 199; *McGuire* v. *Grant*, 25 N. J. L. 356; *Richardson* v. *Vt. Central Rd. Co.*, 25 Vt. 465.

THOMPSON, J.   I.   January 28, 1870, Ezra Edson was the owner of a tract of land embracing the lands of the orators and defendant, described in the master's report. By deed of that date, he conveyed from the westerly end of this tract, a piece of land to D. P. Walker, described as follows :

"Beginning forty-five feet east of the northeast corner of Geo. W. Smith's brick store in the village of Factory Point, at a stake and stones standing in the junction of the road leading to Beech & Lee's shop with the main highway; thence easterly on the south side of said highway forty-seven feet to a stake and stones standing eighteen inches east of the northeast corner of the meat market; thence southerly parallel with the east side of said meat market forty-six feet to a stake and stones standing on the north side of said road leading to Beech & Lee's shop ; thence northeasterly on the north side of said road sixty feet to the place of beginning."

By successive conveyances the title to this piece of land conveyed to Walker, came to the defendant Feb. 27, 1894.

April 1, 1873, Edson conveyed from the tract of land so owned by him, another piece of land on the east of and adjoining the piece previously conveyed to Walker, to one Omar M. Howe, by the following description :

"Beginning on the south line of the highway leading through the village of Factory Point, ninety-one feet east of the northeast corner of the brick store of Burton & Co., and at the northeast corner of the drug store lot of D. P. Walker ; thence easterly on the line of said highway thirty-five and one-half feet ; thence southerly parallel with the east line of said drug store sixty-three feet to the north side of the road leading to Beech's wagon shop ; thence on said last mentioned road westerly to the southeast corner of said drug store lot ; thence northerly on the east line of said drug store lot to the place of beginning."

By successive conveyances, the title to this piece of land conveyed to Howe, came to the orators, Allen M. Graves

and Helen M. Colburn, and at the commencement of this suit, they were, and now are, the owners of the same.

The brick store of George W. Smith, and of Burton & Co., are identical, and it still stands where it stood when said deeds were given, and is the only monument now standing which is referred to in the deed from Edson to Walker, and in the successive conveyances of that lot. The master finds that the easterly line of the Walker lot was at right angles with Main street and parallel with the east line of the brick store.

January 1, 1880, Edson conveyed to Emerson Estabrook the land lying easterly of and adjoining the lot conveyed to Howe, and by successive conveyances the title to the same came to the defendant July 17, 1882, and he is now the owner thereof. This is the lot upon which he is erecting a brick block, the northwest corner of which extends over upon the orators' lot ten inches, covering a strip of land ten inches wide at that point, and running to a point about seven feet southerly from the corner, if the orators' lot is located as they claim.

The main question in dispute is as to the true location of the westerly line of the defendant's land last mentioned, and the easterly line of the orators' land, which lines are identical.

The master finds and reports that it was conceded by both parties, that the orators' lot is thirty-five and one-half feet wide. It does not appear that either the orators or the defendant, in respect to each other, have gained or lost any land by adverse possession.

The northeast corner of the Walker lot is ninety-two feet east of the northeast corner of the brick store. The northwest corner of the orators' lot as described in Edson's deed to Howe is ninety-one feet east of the northeast corner of the brick store and at the northeast corner of the Walker lot. The defendant contends that the distance of "ninety-one

feet" must prevail, while the orators insist that the northeast corner of the Walker lot is so certain and definite that it must prevail as the orators' northwest corner, and the "ninety-one feet," be rejected as repugnant to the clearly expressed intention of the grantor, Edson.

Among the rules that obtain in the construction of deeds, perhaps none is more important than the rule that the intention of the grantor, if not unlawful, shall be given effect, especially when it can be ascertained from the deed itself. There are numerous cases to this effect, among which are *Flagg* v. *Eames*, 40 Vt. 16, and *Clement* v. *Bank of Rutland*, 61 Vt. 298.

When Edson conveyed the lot to Howe, it is not to be presumed that he undertook to convey land that he did not own. He then owned sufficient land easterly of and adjoining the Walker lot, to make the Howe lot thirty-five and one-half feet wide. If the stake and stones once marking the site of the northeast corner of the Walker lot could now be found, that monument would dominate over all other evidence and determine the location of that corner, because that would be fixed and certain. In the absence of a fixed monument, the next most certain data by which the location of a corner can be determined, is *distance* from a fixed and certain object. *Grand Trunk Ry. Co.* v. *Dyer*, 49 Vt. 74. The northeast corner of the brick store is a certain and fixed object, from which the distance, ninety-two feet, is to be measured east, to determine the location of the northeast corner of the Walker lot. As the easterly line of this lot was at right angles to Main street, which we take to be the main highway referred to in the deed to Walker, and parallel with the east line of the brick store, the site of its northeast corner is fixed with certainty. Indeed, no question is made by the defendant either as to its location, or as to its being readily found from the data available for that purpose, but on the contrary, he admits that it is located ninety-two

feet east from the brick store as described in the deed to Walker. In the deed to Howe, the grantor specifically makes the northeast and southeast corners, and the east line of the Walker lot, the westerly boundary of the Howe lot. The last course of the description in that deed is from the *southeast* corner of the Walker lot, northerly *on the east line* of that lot, to the place of beginning. This course, if followed, must locate the point of begining ninety-two feet, instead of ninety-one feet, east of the northeast corner of the brick store.

The master correctly found the easterly line of the Walker lot to be ninety-two feet easterly from the easterly line of the brick store. These lines are parallel with each other. Thus it is apparent that it was the purpose of Edson to convey to Howe a piece of land thirty-five and one-half feet wide on the highway, beginning at the northeast corner of the Walker lot, and out of land east of and adjoining that lot, and this intention must prevail and the ninety-one feet must be rejected as repugnant to the other bounds, and the expressed intention of the grantor. It follows from this that the orators' northwest corner is the northeast corner of the Walker lot, and their easterly line is the line claimed by them.

A portion of the defendant's building and the foundation thereof, are erected upon the orators' lot, and in respect to them, they are entitled to the relief prayed for.

II.    The orators also pray to have the defendant enjoined from making further erections upon his walls resting upon earth immediately against their old walls, which they must remove in constructing their new building. The master finds that the old cellar wall of the orators, still standing, was so injured by the fire which destroyed their building, that it should be rebuilt before any erection is placed upon it, and that the defendant's foundation is built upon soil which is coarse gravel, about four feet above the bottom of

the orators' wall, and is within a few inches at the north end and about four feet from the south end, of this wall. As the defendant's wall is now built the orators cannot remove their wall for the purpose of rebuilding it, without great danger of the walls of the defendant's building falling, unless something is done to support them. The orators intend to rebuild. Owing to the peculiar nature of the soil, the only practical way, in order that the defendant's wall should not require the lateral support of the orators' wall, is that the defendant's wall be rebuilt at as low a level as the foot of the orators', or be otherwise supported, or that the orators' cellar be filled to a level with the foot of defendant's wall. To rebuild or otherwise support the defendant's foundation is practical, but would be somewhat expensive. Without support, the defendant's wall as it now stands, prevents the orators from rebuilding upon the site of the building destroyed. While the defendant was constructing his wall, the orators called his attention to their intention to rebuild, and requested him to place the foot of his wall at a lower depth or on a level with the foot of their wall, which he refused to do. On these facts the orators insist that they are entitled to the relief asked for in respect to this phase of the case.

If the defendant keeps his building and its foundation within the bounds of his own land, he has the legal right to erect them as near the line between his land and that of the orators, and as high above and as deep below, the surface of the soil as he sees fit to do. While the wisdom of the act might be questionable, by erecting them on the line, he would be in the exercise of such legal right, and would violate no legal right of the orators. *Hubbard* v. *Town*, 33 Vt. 295.

The law in this state in respect to the right of a land owner to have his soil supported by that of the adjacent owner, is not an open question, and is stated in *Hatch* v.

*Vt. Cent. R. R. Co.*, 25 Vt. 49; *Richardson* v. *Vt. Cent. R. R. Co.*, 25 Vt. 465, and *Beard* v. *Murphy*, 37 Vt. 99. In the latter case the court by Poland, C. J., says:

"It is now well settled that the owner. of land is entitled to have it supported and protected in its natural condition, by the land of his adjoining proprietor, and that if such adjoining owner remove such natural support, whereby the soil of the former is disturbed or falls away, he is legally liable for all damage so occasioned. * * It is also equally well settled, that the owner of land is not entitled to claim the support of the adjoining soil for any artificial structure he may erect upon his land, which increases the lateral pressure, and that for any damages to such artificial structure, caused by the removal of the natural support of the soil by such adjacent proprietor, he is not liable unless he is guilty of carelessness and negligence in his manner of making the removal, or he fails to give prior notice thereof to the owner of the structure, so that he may take the necessary measures for the protection and preservation of his property from the consequence of such act."

This is the law determining and controling the right of the orators to excavate on their land adjoining the defendant's land, and subject to its limitations, they have a right to dig and excavate on their land as they see fit to do.

If, as a result of lawful excavating on their lot by the orators, the defendant's building should fall or slide upon their land, it is not necessary to now decide whether or not he would be liable for all damages occasioned thereby.

The respective rights of the parties to build and excavate, being as stated, the orators are not entitled to have the defendant enjoined from making further erection upon his walls resting upon earth immediately against their old walls, so far as his walls stand upon his own land.

The decree in the court of chancery was for the orators in accordance with the entire prayer of the bill, and therefore must be reversed.

*Decree reversed and cause remanded with mandate that*

*decree be entered for the orators adjudging their easterly line to be located as found by the master, and perpetually enjoining the defendant from erecting any walls, buildings and superstructures upon the land of the orators, and decreeing and ordering that the defendant remove from the land of the orators, all brick walls, stone walls, buildings and superstructures of any and every kind, erected or placed by him upon the land of the orators, by a time to be fixed by the court of chancery.*